E-FILED
Wednesday, 24 April, 2019  06:29:26 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| **JANEAN BAIRD, LIANNA BANKORD** | ) |
| **ELIZABETH BERAN, ERIN BURNISON,** | ) |
| **BRENT GOKEN. DICK GOKEN,** | ) |
| **RALSTON SCOTT JONES, ED MADISON** | ) |
| **BRAD MOSBY, LIZBETH OGIELA-SCHECK,** | ) |
| **BLAIR VALENTINE, NATALIE WETZEL,** | ) |
| **SAVANNAH WETZEL** | ) |
| | ) **Case No. _____** |
| **Plaintiffs,** | ) **JURY DEMANDED** |
| | ) **EQUITABLE RELIEF SOUGHT** |
| **v.** | ) |
| | ) |
| **TOWN OF NORMAL, and** | ) |
| **BUSH DEVELOPMENT, LLC** | ) |
| | ) |
| **Defendants.** | ) |

**COMPLAINT**

Plaintiffs, JANEAN BAIRD, LIANNA BANKORD, ELIZABETH BERAN, ERIN

BURNISON, BRENT GOKEN. DICK GOKEN, RALSTON SCOTT JONES, ED MADISON,

BRAD MOSBY, LIZBETH OGIELA-SCHECK, BLAIR VALENTINE, NATALIE WETZEL,

SAVANNAH WETZEL, ("Plaintiffs" or the "Artists"), by and through their undersigned

counsel, DAVIS McGRATH LLC, as and for their Complaint against Defendants TOWN OF

NORMAL and BUSH DEVELOPMENT, LLC, ("Defendants") hereby allege as follows:

**PRELIMINARY STATEMENT**

1.      In 2011, the Town of Normal (the "Town") permitted a number of visual artists to

create and display their artworks on the exterior of a building the Town owns at 104 E. Beaufort,

Normal, Illinois (the "Building").

2.      The Plaintiffs are artists who, on their own time and without compensation, installed artworks (the "Artworks") on this exterior wall of the building for the people of the Town, the region, the State, and visitors from outside the State, to enjoy.

3.      Without obtaining permission from the Plaintiffs, the Town has decided to demolish the Building, including the Artworks, in order to launch a commercial development in Uptown Normal together with defendant Bush Development.  The Town has announced plans for a $30 million development project in Uptown Normal, which includes plans for the destruction of the Building on which the Artworks are painted.  The planned destruction of the Artworks on the Building is being undertaken knowingly over the objection of the Plaintiffs and without regard to the iconic status of the Artworks or the Plaintiffs' rights and interest in preserving the integrity of the Artworks.

4.      The planned destruction of the Building will also destroy other works of visual art created on the Building by other artists who are not parties to this case.  The demolition of the Building will result in the permanent destruction of numerous artworks by different artists, including those of Plaintiffs.   The artworks that appear on the exterior of the Building are, as a group, sometimes referred to by the media and by the public as the Uptown Normal Mural (the "Mural").

## NATURE OF THE CLAIMS

5.      Plaintiffs seek injunctive and equitable relief and, unless enjoined, monetary damages and attorneys' fees to redress defendants' unlawful destruction of their works of art in violation of the Visual Artists Rights Act, 17 U.S.C. §106A *et seq.* ("VARA").

## THE PARTIES

6.      Plaintiff Janean Baird ("Baird") is an artist and resides in Bloomington, Illinois.  Baird is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

7.      Plaintiff Lianna Bankord ("Bankord ") is an artist and resides in Normal, Illinois.  Bankord is the "author of a work of visual art" within the meaning of 17 U.S.C. §101 and §106A.

8.      Plaintiff Elizabeth Beran ("Beran") is an artist and resides in Normal, Illinois. Beran is the "author of a work of visual art" within the meaning of 17 U.S.C. §101 and §106A.

9.      Plaintiff Erin Burnison ("Burnison") is an artist and resides in Normal, Illinois. Burnison is the "author of a work of visual art" within the meaning of 17 U.S.C. §101 and §106A.

10.     Plaintiff Brent Goken ("Brent Goken ") is an artist and resides in Washington, Illinois.  Brent Goken is the "author of a work of visual art" within the meaning of 17 U.S.C. §101 and §106A.

11.     Plaintiff Dick Goken ("Dick Goken") is an artist and resides in Bloomington, Illinois.  Dick Goken is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

12.     Plaintiff Ralston Scott Jones ("Jones") is an artist and resides in Normal, Illinois.  Jones is the "author of a work of visual art" within the meaning of 17 U.S.C. §101 and §106A.

13.     Plaintiff Ed Madison ("Madison") is an artist and resides in Cedar Rapids, Iowa.  Madison is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

14.     Plaintiff Brad Mosby ("Mosby") is an artist and resides in Sun City, Arizona. Mosby is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

15.     Plaintiff Lizbeth Ogiela-Scheck ("Ogiela-Scheck") is an artist and resides in Bloomington, Illinois.  Ogiela-Scheck is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

15.     Plaintiff Blair Valentine ("Valentine") is an artist and resides in Virginia Beach, Virginia.  Valentine is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

16.     Plaintiff Natalie Wetzel ("Natalie Wetzel") is an artist and resides in Normal, Illinois.  Wetzel is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

17.     Plaintiff Savannah Wetzel ("Savannah Wetzel") is an artist and resides in Normal, Illinois.  Wetzel is the author of a "work of visual art" within the meaning of 17 U.S.C §101 and §106A.

18.     Defendant the Town of Normal is an Illinois municipal corporation with an office and principal place of operation at 11 Uptown Circle, Normal, Illinois 61761.

19.     Defendant Bush Development, LLC. is an Iowa limited liability company with a principal place of business in Davenport Iowa.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §1338(a) in that this action arises under the U.S. Copyright Act, 17 U.S.C. §101, et seq.

21.     This Court has personal jurisdiction over defendants because they own real property and conduct operations within, transact business in, and provide services within the Town of Normal, State of Illinois.

22.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because the events that give rise to the claim have occurred and, unless enjoined, will occur in this district.

## BACKGROUND

**Origination of Concept and Permission to Paint Artworks on the Building**

23.     In July, 2011, The Pod I, Inc. (the "Pod"), an Illinois corporation, was the tenant in space rented from the Town of Normal in the Building at 104 E. Beaufort, in which the Pod operated an art gallery and shop.  Plaintiff Natalie Wetzel was one of the proprietors of the shop.  Wetzel and the other proprietors spent a significant amount of money remodeling and refurbishing the rented interior space to create a small and beautiful retail shop.

24.     The west exterior wall of the Building was unsightly brick, unbefitting of the artistic nature of the shop.  The Pod, however, had no authority or control over the exterior of the Building, and Natalie Wetzel had been informed by the Town that no artworks could be painted on the west exterior wall of the Building without permission from the Town.

25.     In an effort to beautify the exterior of the Building, Natalie Wetzel,
proposed to the Town the concept of Wetzel issuing an open call inviting local artists and
other members of the community to paint artistic designs on the west exterior wall of the
Building.

26.     In May, 2011, Natalie Wetzel communicated with Mercy Davison, Town
Planner for the Town, in order to obtain the necessary permission to proceed with the plan
of having local artists paint works of art on the Building.

27.     In an e-mail dated May 13, 2011, Davison wrote to Natalie Wetzel, stating
"I will ask the chairperson of the UDRC [Uptown Design Review Commission] to sign off
on the painting of the trim and the painting of the brick on the west wall."  A week later,
on May 18, 2011, the Town provided permission to proceed with the decoration of the
west exterior wall.  On that date, Davison sent an e-mail to Natalie Wetzel stating "I have
the signed form that approves your painting of the trim and the mural on the west wall."

28.     Using social media and word of mouth, Natalie Wetzel and others then put
out an open call to local artists to contribute works of art to the wall.  Natalie Wetzel and
others primed the brick wall and created a grid of approximately 50 rectangular spaces
onto which artists could paint their artistic works.  Each artist decided what he or she
wanted to paint in the space that was allotted to him or her.  Most of the artworks were
painted onto the wall in July, 2011.  Each artist volunteered their time and artistic vision
without payment.

**Public Recognition of the Artworks**

29.     The project of allowing numerous artists to paint separate artworks on the exterior wall was a great success.  It was a striking improvement over the drab brick wall that existed before.

Before:



After:



30.     With the attractive appearance of the artworks and their placement at a prominent location at the major traffic circle in Uptown Normal near Illinois State University, the paintings became over time highly recognized and much beloved by the

community.  The Mural is frequently mentioned in news articles about the Uptown area in Normal.  News reports about the Mural often refer to it as "iconic."

31.     The Mural is an extremely popular place for residents, tourists, and visitors to take pictures and to memorialize special occasions such as weddings, proms, and graduations.

32.     The Town of Normal itself has for many years used photos of the Mural in its newsletters, social media, and other public communications.

**Defendants Plan to Destroy the Artworks**

33.     At no time before or since the creation of the Artworks did the Town or Bush Development contact any of the Plaintiffs to seek permission to destroy their respective works of art, and no Plaintiff has ever consented to the destruction of his or her Artwork.

34.     On January 16, 2018, the Town Council convened to vote on a resolution authorizing the Town to begin negotiations with defendant Bush Construction for the development of a proposed $29.2 million mixed-use building on the northeast arc of the Uptown Circle that might result in the destruction of three historic buildings on Beaufort St., including 104 E. Beaufort, the Building on which the Mural is painted.  Several members of the public presented public comments in opposition to the destruction of any of the historic buildings on Beaufort St.  In response, the City Manager of the Town stated that the proposed resolution was only for the selection of a developer and that no decision had been made yet on the demolition or construction of any buildings.

35.     At that meeting, the Town Council approved the commencement of negotiations with defendant Bush Development, which had submitted a plan that anticipated destruction of the Building.

36.     Nine months later, on October 15, 2018, the Town Council considered a proposed ordinance authorizing an agreement with developer Bush Development to build a five-story mixed-use building at the site of the traffic circle in Uptown Normal.  Several members of the public made public comments in opposition to the proposed ordinance, but the Council unanimously approved the ordinance.

37.     The agreement provides that Bush Development will cover about $25 million of the project cost and the Town will pick up the remaining $4.2 million with tax increment financing money.  The development plans for the site include the demolition of the Building.

38.     On October 18, 2018, the Plaintiffs, through their counsel, sent a letter to the Town and Bush Construction advising them that destruction of the Mural at 104 E. Beaufort St. would constitute a violation of the Plaintiffs' rights under the Visual Artists Rights Act, 17 U.S.C. § 106A(a)(3)(B).

39.     The Town Council's October, 2018 approval of the ordinance was met with significant resistance and criticism from the public, including a petition objecting to the destruction of the Mural that has obtained over 3900 signatures.

40.     The issuance of demolition permits for the Building required approval of the Historic Preservation Commission of the Town.  That Commission met on January 8, 2019, and voted not to issue the demolition permits.  Upon such action, the Town had a 30-day period to start the process to designate the property as a historic landmark.  In the

absence of such action, the Town would be enabled to proceed with demolition after the 30-day period ended.  The Town did not start the process, and the 30-day period expired on February 7, 2019.

**The Works of Visual Art at the Building**

41.	The Plaintiffs are artists who installed works of visual art for public enjoyment at the Building at 104 E. Beaufort.  Their Artworks have been threatened by Defendants to be destroyed, distorted, mutilated, or modified.

42.	The works of art installed by the Plaintiff Artists are as follows:

**Plaintiff Baird's Work of Visual Art**

43.	Plaintiff Baird had one work of visual art on the Building.

44.	Plaintiff Baird's work of visual art on the Building was titled "Calvary's Tree". Below is an image of the work:



45.	Plaintiff Baird's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

46.	Plaintiff Baird's work of visual art was installed in approximately July, 2011.

47.     Plaintiff Baird's work of visual art was installed with the permission of the Town.

48.     Plaintiff Baird's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

49.     Plaintiff Baird's work of visual art is a work of recognized stature.

50.     The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

51.     Plaintiff Baird has not executed or signed a written instrument that specifies that installation of Calvary's Tree may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason including demolition of the Building.

**Plaintiff Bankord's Work of Visual Art**

52.     Plaintiff Bankord had one work of visual art on the Building.

53.     Plaintiff Bankord's work of visual art on the Building depicted a "Spider Web". Below is an image of the work:



54.    Plaintiff Bankord's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

55.    Plaintiff Bankord's work of visual art was installed in approximately July, 2011.

56.    Plaintiff Bankord's work of visual art was installed with the permission of the Town.

57.    Plaintiff Bankord's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

58.    Plaintiff Bankord's work of visual art is a work of recognized stature.

59.    The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

60.    Plaintiff Bankord has not executed or signed a written instrument that specifies that installation of Spider Web may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Beran's Work of Visual Art**

61.    Plaintiff Beran had one work of visual art on the Building.

62.    Plaintiff Beran's work of visual art on the Building depicted a "Bird on Wire." Below is an image of the work:



63.     Plaintiff Beran's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

64.     Plaintiff Beran's work of visual art was installed in approximately July, 2011.

65.     Plaintiff Beran's work of visual art was installed with the permission of the Town.

66.     Plaintiff Beran's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

67.     Plaintiff Beran's work of visual art is a work of recognized stature.

68.     The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

69.     Plaintiff Beran has not executed or signed a written instrument that specifies that installation of Bird on Wire may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Burnison's Work of Visual Art**

70.     Plaintiff Burnison had one work of visual art on the Building.

71.     Plaintiff Burnison's work of visual art on the Building depicted "Dinosaurs." Below is an image of the work:



72.     Plaintiff Burnison's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

73.     Plaintiff Burnison's work of visual art was installed in approximately July, 2011.

74.     Plaintiff Burnison's work of visual art was installed with the permission of the Town.

75.     Plaintiff Burnison's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

76.     Plaintiff Burnison's work of visual art is a work of recognized stature.

77.     The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

78.     Plaintiff Burnison has not executed or signed a written instrument that specifies that installation of Dinosaurs may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Brent Goken's Work of Visual Art**

79.     Plaintiff Brent Goken had one work of visual art on the Building.

80.     Plaintiff Brent Goken's work of visual art on the Building was titled "Cattails". Below is an image of the work:



81.    Plaintiff Brent Goken's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

82.    Plaintiff Brent Goken's work of visual art was installed in approximately July, 2011.

83.    Plaintiff Brent Goken's work of visual art was installed with the permission of the Town.

84.    Plaintiff Brent Goken's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

85.    Plaintiff Brent Goken's work of visual art is a work of recognized stature.

86.    The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. His work has been recognized as having stature by the art community and the general public.

87.    Plaintiff Brent Goken has not executed or signed a written instrument that specifies that installation of Cattails may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Dick Goken's Work of Visual Art**

88.    Plaintiff Dick Goken had one work of visual art on the Building.

89.    Plaintiff Dick Goken's work of visual art on the Building depicted "Rectangles." Below is an image of the work:



90.    Plaintiff Dick Goken's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

91.    Plaintiff Dick Goken's work of visual art was installed in approximately July, 2011.

92.    Plaintiff Dick Goken's work of visual art was installed with the permission of the Town.

93.    Plaintiff Dick Goken's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

94.    Plaintiff Dick Goken's work of visual art is a work of recognized stature.

95.    The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. His work has been recognized as having stature by the art community and the general public.

96.    Plaintiff Dick Goken has not executed or signed a written instrument that specifies that installation of Rectangles may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Jones' Work of Visual Art**

97.     Plaintiff Jones had one work of visual art on the Building.

98.     Plaintiff Jones's work of visual art on the Building depicted "Eye Fish."

Below is an image of the work:



99.     Plaintiff Jones's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

100.     Plaintiff Jones's work of visual art was installed in approximately July, 2011.

101.     Plaintiff Jones's work of visual art was installed with the permission of the Town.

102.     Plaintiff Jones's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

103.     Plaintiff Jones's work of visual art is a work of recognized stature.

104.     The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. His work has been recognized as having stature by the art community and the general public.

105.     Plaintiff Jones has not executed or signed a written instrument that specifies that installation of Eye Fish may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Madison's Work of Visual Art**

106.     Plaintiff Madison had one work of visual art on the Building.

107.     Plaintiff Madison's work of visual art on the Building was titled "Handicap". Below is an image of the work:



108.     Plaintiff Madison's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

109.     Plaintiff Madison's work of visual art was installed in approximately July, 2011.

110.     Plaintiff Madison's work of visual art was installed with the permission of the Town.

111.     Plaintiff Madison's work of visual art was installed without any fixed period
of duration and was intended to last indefinitely.

112.     Plaintiff Madison work of visual art is a work of recognized stature.

113.     The work appears in the Uptown Normal Mural, and has been the subject of
innumerable news articles and television and radio features. His work has been recognized as
having stature by the art community and the general public.

114.     Plaintiff Madison's has not executed or signed a written instrument that specifies
that installation of Handicap may subject that work of visual art to destruction, distortion,
mutilation, or other modification by the defendant for any reason, including demolition of the
Building.

**Plaintiff Mosby's Work of Visual Art**

115.     Plaintiff Mosby had one work of visual art on the Building.

116.     Plaintiff Mosby's work of visual art on the Building was titled "Podnadoes."
Below is an image of the work:



117.     Plaintiff Mosby's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

118.     Plaintiff Mosby's work of visual art was installed in approximately July, 2011.

119.     Plaintiff Mosby's work of visual art was installed with the permission of the Town.

120.     Plaintiff Mosby's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

121.     Plaintiff Mosby's work of visual art is a work of recognized stature.

122.     The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. His work has been recognized as having stature by the art community and the general public.

123.     Plaintiff Mosby has not executed or signed a written instrument that specifies that installation of Podnadoes may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Ogiela-Scheck's Work of Visual Art**

124.     Plaintiff Ogiela-Scheck had one work of visual art on the Building.

125.     Plaintiff Ogiela-Scheck's work of visual art on the Building was titled "Spirals." Below is an image of the work:



126.     Plaintiff Ogiela-Scheck's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

127.     Plaintiff Ogiela-Scheck's work of visual art was installed in approximately July, 2011.

128.     Plaintiff Ogiela-Scheck's work of visual art was installed with the permission of the Town.

129.     Plaintiff Ogiela-Scheck's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

130.     Plaintiff Ogiela-Scheck's work of visual art is a work of recognized stature.

131.     The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

132.     Plaintiff Ogiela-Scheck has not executed or signed a written instrument that specifies that installation of Spirals may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Valentine's Work of Visual Art**

133.     Plaintiff Valentine had one work of visual art on the Building.

134.     Plaintiff Valentine's work of visual art on the Building was titled "Abstract Spiral." Below is an image of the work:



135.    Plaintiff Valentine's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

136.    Plaintiff Valentine's work of visual art was installed in approximately July, 2011.

137.    Plaintiff Valentine's work of visual art was installed with the permission of the Town.

138.    Plaintiff Valentine's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

139.    Plaintiff Valentine's work of visual art is a work of recognized stature.

140.    The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

141.    Plaintiff Valentine has not executed or signed a written instrument that specifies that installation of Abstract Spiral may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Natalie Wetzel's Work of Visual Art**

142.    Plaintiff Natalie Wetzel had two works of visual art on the Building.

143.    Plaintiff Natalie Wetzel's first work of visual art on the Building was titled "Pod." Below is an image of the work:



144.    Plaintiff Natalie Wetzel's second work of visual art on the Building was titled "Car." Below is an image of the work:



145.    Plaintiff Natalie Wetzel's works of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

146.    Plaintiff Natalie Wetzel's works of visual art were installed in approximately July, 2011.

147.    Plaintiff Natalie Wetzel's works of visual art were installed with the permission of the Town.

148.    Plaintiff Natalie Wetzel's works of visual art were installed without any fixed period of duration and was intended to last indefinitely.

149.    Plaintiff Natalie Wetzel's works of visual art are works of recognized stature.

150.    The works appear in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her works have been recognized as having stature by the art community and the general public.

151.    Plaintiff Natalie Wetzel has not executed or signed a written instrument that specifies that installation of Car and Pod may subject those works of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

**Plaintiff Savannah Wetzel's Work of Visual Art**

152.    Plaintiff Savannah Wetzel had one work of visual art on the Building.

153.    Plaintiff Savannah Wetzel's work of visual art on the Building was titled "Flower." Below is an image of the work:



154.    Plaintiff Savannah Wetzel's work of visual art on the Building, unless enjoined, will be destroyed, distorted, mutilated or modified by the Defendants.

155.    Plaintiff Savannah Wetzel's work of visual art was installed in approximately July, 2011.

156.    Plaintiff Savannah Wetzel's work of visual art was installed with the permission of the Town.

157.    Plaintiff Savannah Wetzel's work of visual art was installed without any fixed period of duration and was intended to last indefinitely.

158.    Plaintiff Savannah Wetzel's work of visual art is a work of recognized stature.

159.    The work appears in the Uptown Normal Mural, and has been the subject of innumerable news articles and television and radio features. Her work has been recognized as having stature by the art community and the general public.

160.    Plaintiff Savannah Wetzel has not executed or signed a written instrument that specifies that installation of Flower may subject that work of visual art to destruction, distortion, mutilation, or other modification by the defendant for any reason, including demolition of the Building.

## FIRST CAUSE OF ACTION
## VISUAL ARTISTS RIGHTS ACT
## 17 U.S.C. §106A

161.    Plaintiffs repeat and reiterate each and every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

162.    Each Artwork by a Plaintiff described herein constitutes copyrightable subject matter.

163.    Each of the Plaintiffs maintains all ownership and copyright interests in the Artwork he or she created.

164.    Each Artwork by a Plaintiff described herein is a work of visual art within the meaning of 17 U.S.C. §101.

165.    Plaintiffs' Artworks are works of recognized stature within the meaning of VARA.  The Artworks have high recognition in and beyond the Town of Normal.  The Artworks are frequently depicted, discussed, and shared in the news media and on various

social media platforms, including by the Defendant Town of Normal.  The Artworks are recognized by the artistic community and by the general public.

166.     None of the Plaintiffs has executed a written agreement that specifies that the installation of any of their individual Artworks on the Building may subject those works to destruction, distortion, mutilation or other modification.

167.     As of the filing of the Complaint, Defendants intend to imminently destroy, distort, mutilate or modify the Artworks created by the Plaintiffs.

168.     Unless enjoined, the destruction, distortion, mutilation, or modification of the Artworks by the defendants will be prejudicial to the Plaintiffs' honor and/or reputation, and will cause them substantial harm.

169.     The harm to the Plaintiffs' honor and/or reputation will be irreparable.

170.     Plaintiffs have no adequate remedy at law.

171.     Pursuant to 17 U.S.C. §106A(a)(3), each of the Plaintiffs has the right to prevent the destruction, distortion, mutilation or modification of his or her work of visual art.

172.     Unless enjoined, Defendants will destroy, distort, or modify each and every one of the Artworks installed by Plaintiffs at the Uptown Mural site.

173.     The Artworks have been incorporated in or made part of the Building in such a way that removing the Artworks from the Building will cause the destruction, distortion, or other modification of the Artworks.

174.     Defendants' actions were willful.  Defendants were aware that Plaintiffs objected to the destruction of their Artworks and were fully aware, before destruction, that none of the Plaintiffs had ever executed a waiver of their rights under VARA or given Defendants permission to destroy the Artworks.  In addition, the Town proceeded with its plans to destroy

the Artworks on the Building despite the fact that the Historic Preservation Commission voted not to demolish the Building.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

A)  Enter an injunction prohibiting the destruction, distortion, mutilation or other modification of their Artworks; and

B).    Award such actual damages as will compensate Plaintiffs fully for their financial losses and for the damage to their honor and reputation and for their humiliation, mental anguish, emotional distress and any other physical and mental injuries Plaintiffs suffered due to Defendants' improper conduct pursuant to VARA; or, alternatively,

C).    Award statutory damages to Plaintiffs pursuant to VARA; and

D).    Award reasonable costs and attorneys' fees pursuant to VARA; and

E).    Grant such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated:        April 24, 2019

*/s/ William T. McGrath*
One of Plaintiff's Attorneys
William T. McGrath
DAVIS McGRATH LLC
125 S. Wacker Dr., Suite 1380
Chicago, Illinois 60606
(312) 332-3033